UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-226(7) (NEB/TNL)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ABDIKADIR KADIYE,

        Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

1.    The United States of America and Abdikadir Kadiye (hereinafter referred to as the "Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the Defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

2.    **Charges**. The Defendant agrees to plead guilty to Count Eighteen of the Superseding Indictment, which charges the Defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. The Defendant fully understands the nature and elements of the crime with which he has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against him in the Superseding Indictment.

3.    **Factual Basis**. The Defendant is pleading guilty because he is in fact guilty of Count Eighteen of the Superseding Indictment. In pleading guilty, the Defendant admits the following facts and that those facts establish his guilt beyond

1



a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From in or about January 2021 through 2022, the Defendant knowingly participated in a fraudulent scheme to obtain and misappropriate Federal Child Nutrition Program funds. The Defendant was the president of Hobyo Health Care Foundation, through which he fraudulently received Federal Child Nutrition Program funds for his three food sites in Minnetonka, Eden Prairie, and Minneapolis. The Defendant enrolled his sites in the Federal Child Nutrition Program under the sponsorship of Sponsor A.

As part of the scheme, the Defendant caused the submission of falsified meal counts and fake attendance rosters in order to receive reimbursement funds fraudulently from the Federal Child Nutrition Program. For instance, through his Eden Prairie site alone the Defendant fraudulently claimed to have served more than 111,000 meals and snack servings in just two months in 2021. In reality, the Defendant's operations for his Eden Prairie site served a fraction of the food amounts claimed. In addition, the Defendant caused the submission of fake attendance rosters for his Minneapolis site, including submitting to Sponsor A an attendance roster listing the fake names of approximately 2,100 children who purportedly received meals at his Minneapolis site.

The Defendant admits that the electronic submission of fraudulent records from him constitutes an interstate wiring for the purpose of executing the scheme in violation of Title 18, United States Code, Section 1343. For example, as alleged in

2

Count Eighteen, on or about November 30, 2021, the Defendant emailed a fraudulent roster to Sponsor A containing 1,347 fake names of children purportedly fed by the Defendant at his Eden Prairie site.

The Defendant spent relatively minimal amounts on food and meals, even though he collectively claimed to feed needy children approximately 445,000 meals at his sites, which was false. Ultimately, the sites for which the Defendant was supposed to provide food fraudulently received approximately $1.1 million in Federal Child Nutrition Program funds to reimburse substantial food and meal expenses that the Defendant did not actually incur. Defendant Fahad Nur and defendant AWALE were the Defendant's phony food suppliers, among others.

It was further part of the scheme to defraud that the Defendant received fraudulent proceeds from the Federal Child Nutrition Program into accounts that he controlled. The Defendant exchanged proceeds with other scheme participants, including his receipt of approximately $200,900 from defendant Haji Osman Salad as well as the defendant's payment of approximately $120,000 in or about January 2022 to defendant Fahad Nur's business, The Produce.

In furtherance of the fraud scheme, the Defendant misappropriated a substantial portion of Federal Child Nutrition Funds to benefit himself and toward expenditures unrelated to feeding children, which included the Defendant's withdrawal of at least $281,000 in cash. In addition, between approximately February 2021 to December 2021, the Defendant withdrew approximately $142,943 from one of his bank accounts to pay his credit card bills, which contained personal

expenditures, including insurance, gym memberships, airline tickets, hotels, rental cars, and cell phone bills. The Defendant acknowledges that throughout 2021 he further misappropriated and laundered hundreds of thousands of dollars in Federal Child Nutrition Program funds on residential and commercial real estate, including a laundromat, and on vehicles, including approximately $105,038.16 for the purchase of a 2022 BMW sports utility vehicle.

In total, of the approximately $1.1 million in fraudulent claims submitted by the Defendant for his sites, the Defendant fraudulently obtained from the Federal Child Nutrition Program at least $994,866 in fraud proceeds.

4.      **Waiver of Pretrial Motions**. The Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the Defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The Defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

5.      **Waiver of Constitutional Trial Rights**. The Defendant understands that he has the right to go to trial. At trial, the Defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The Defendant understands that he has

4

the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The Defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the Defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The Defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the Defendant guilty without a trial.

6.      **Additional Consequences**. The Defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7.      **Statutory Penalties**. The parties agree that wire fraud, as charged in Count Eighteen of the Superseding Indictment, carries statutory penalties of:

      a.      a maximum term of imprisonment of 20 years in prison;

      b.      a supervised release term of up to three years;

      c.      a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater;

      d.      assessment to the Defendant of the costs of prosecution as authorized by 28 U.S.C. §§ 1918(b) and 1920; and

      e.      a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

8.      **Revocation of Supervised Release.** The Defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the Defendant could be

sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The Defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Guidelines Calculations**. The parties acknowledge that the Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a. Base Offense Level. The parties agree that the base offense level for wire fraud is **7**. U.S.S.G. § 2B1.1(a)(1).

b. Specific Offense Characteristics. The parties agree that the offense level should be increased by **14** levels because the loss ($1,172,387.28) is more than $550,000, but not more than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(H). The parties agree that no other specific offense adjustments apply.

c. Chapter 3 Adjustments. The Defendant reserves the right to argue that he is eligible for a 2-level reduction as a minor participant under U.S.S.G. § 3B1.2(b). The government disagrees that a role reduction under U.S.S.G. § 3B1.2 applies to the Defendant. The parties agree that, other than credit for acceptance of responsibility, no Chapter 3 adjustments apply.

d. Acceptance of Responsibility. The government agrees to recommend that the Defendant receive a **2**-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the Defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **1**-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be

6

imposed shall be determined by the Court in its discretion. However, the Defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the Defendant testifies truthfully during the change of plea and sentencing hearings; (2) the Defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the Defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the Defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.  Criminal History Category. The parties believe that, at the time of sentencing, the Defendant will fall into Criminal History Category **I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The Defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the Defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.  Guidelines Range. If the adjusted offense level is **18 (7 + 14 − 3)**, and the criminal history category is **I**, the Sentencing Guidelines range is **27-33** months of imprisonment.

g.  Fine Range. If the adjusted offense level is **18**, the Sentencing Guidelines fine range is **$10,000** to **$100,000**. U.S.S.G. § 5E1.2(c)(3).

h.  Supervised Release. The Sentencing Guidelines call for a term of supervised release of between one and three years for Count 18. U.S.S.G. § 5D1.2(a)(2).

7

10.    **Potential New Zero-Point Offender Guidelines Provision Under**

**U.S.S.G. § 4C1.1.** The Court must apply the sentencing Guidelines Manual in effect as of the date of sentencing. U.S.S.G. § 1B1.11(a). However, the U.S. Sentencing Commission recently proposed a new provision of the United States Sentencing Guidelines that will call for a 2-level downward adjustment for defendants with zero criminal history points under some circumstances. Specifically, the proposed provision, § 4C1.1, would provide a decrease of 2 levels from the offense level determined under Chapters Two and Three if the Defendant meets all of the following criteria: (1) the Defendant did not receive any criminal history points from Chapter Four, Part A; (2) the Defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the Defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the Defendant did not personally cause substantial financial hardship; (7) the Defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the Defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the Defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as

8

defined in 21 U.S.C. § 848. The Sentencing Commission has published this new provision for retroactivity consideration.

The proposed new provision will not take effect—if at all—until November 1, 2023. If the Defendant is sentenced after the new provision takes effect, the parties believe he will qualify for the 0-Point Offender Adjustment under § 4C1.1. With that reduction, the Defendant's total offense level is 16, and the Criminal History Category is I, resulting in a Guidelines range of 21 to 27 months of imprisonment.

If the Defendant is sentenced before November 1, 2023, the Defendant may seek a variance from his otherwise-applicable Guidelines range based on the proposed U.S.S.G. § 4C1.1. The government agrees to support the variance and to ask the Court to sentence the defendant as if U.S.S.G. § 4C1.1 had taken effect on the express condition that the defendant agrees that he will not later seek, by any means, including through a motion pursuant to 18 U.S.C. § 3582(c), a further reduced sentence on the basis that the new § 4C1.1 was inapplicable at the time his sentence was imposed, even if the proposed version of § 4C1.1 is made retroactive.

This provision will not apply if, between now and the date of sentencing, the proposed amendments are rejected by proper authority or withdrawn by the U.S. Sentencing Commission.

11.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the

9

applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the Defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

12.    **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the Defendant will have no right to withdraw his guilty plea.

13.    **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the Defendant is convicted. U.S.S.G. § 5E1.3. The Defendant agrees that the special assessment is due and payable at the time of sentencing.

14.    **Restitution Agreement**. The Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The Defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named

10

in the Superseding Indictment. The Defendant agrees that he owes restitution in the amount of $~~894,866.31~~. $867,897 *CCC AV*

15. **Disclosure of Assets.** The Defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the Defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the Defendant. The Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The Defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the Defendant's assets and expressly authorizes the United States to obtain a credit report on the Defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the Defendant agrees to submit to one or more asset interviews or depositions under oath.

16. **Forfeiture.** The Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, as charged in Count Eighteen of the Superseding Indictment, including but not limited to:

a. 2020 Ford Transit cargo van, VIN XXXXXXXXXXX;

11

b.  2016 Isuzu NRR truck, VIN XXXXXXXXXXXXX;

c.  2020 Toyota Tundra pickup truck, VIN XXXXXXXXXXXX;

d.  2022 BMW Model X4 sports utility vehicle, VIN XXXXXXXXXX;

e.  residential property located at 2930 Blaisdell Avenue #227 in Minneapolis, Minnesota;

f.  commercial property located at 4301 4th Avenue South in Minneapolis, Minnesota; and

g.  commercial property located at 3246 Nicollet Avenue in Minneapolis, Minnesota.

The Defendant admits that this property is subject to forfeiture because it constitutes or is traceable to the wire fraud scheme alleged in Count Eighteen of the Superseding Indictment.

The Defendant consents to the entry of a money judgment forfeiture in the amount of $~~994,866.01~~ $867,897 CCC AJU MSE, which represents the amount of proceeds he obtained from the wire fraud scheme alleged in Count Eighteen of the Superseding Indictment. The Defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

17.  **Waivers of Appeal and Collateral Attack.** The Defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the Defendant's waiver of the right to appeal guilt or innocence,

sentence and restitution, and the constitutionality of the statutes to which the Defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by Defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range of imprisonment. The Defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The Defendant has discussed these rights with his attorney. The Defendant understands the rights being waived, and the Defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the United States may appeal the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range of imprisonment.

18. **FOIA Requests.** The Defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

19. **Complete Agreement.** The Defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The Defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the Defendant.

Dated: 8/31/2023

ANDREW M. LUGER
United States Attorney

BY:    MATTHEW S. EBERT
JOSEPH H. THOMPSON
HARRY M. JACOBS
CHELSEA A. WALCKER
Assistant United States Attorneys

Dated: 8/31/2023

ABDIKADIR KADIYE
Defendant

Dated: 8/31/2023

CHARLES CONNOR CREMENS
Counsel for Defendant

14