UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-226(1) (NEB/DTS)

SCANNED
SEP 20 2024
U.S. DISTRICT COURT MPLS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

HAJI OSMAN SALAD,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and Haji Osman Salad (the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Count Fourteen of the Superseding Indictment, which charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. The defendant fully understands the nature and elements of the crime with which he has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against him in the Superseding Indictment.

2.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count Fourteen of the Superseding Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a

1

reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From in or about June 2020 through in or about 2022, the defendant knowingly participated in a scheme to defraud the Federal Child Nutrition Program, which was designed to provide free meals to children. More specifically, the defendant was the principal of Haji's Kitchen LLC ("Haji's Kitchen"), which he registered with the State of Minnesota in 2020. Through Haji's Kitchen, the defendant fraudulently participated in the Federal Child Nutrition Program as a vendor. The defendant also created "US Halal Foods LLC" to give the false impression that he was involved in the food business when, in reality, it was a shell company through which he committed fraud. As a vendor, the defendant was supposed to provide food to sites participating in the Federal Child Nutrition Program and be reimbursed for the cost of food he actually provided to feed children.

However, as part of his fraud, the defendant received millions of dollars in Federal Child Nutrition Program money for food expenses he did not actually incur. Between in or about June 2020 and March 2022, the defendant falsely claimed that his business, Haji's Kitchen, was a food vendor for more than 15 million meals to various Federal Child Nutrition Program sites in Minnesota. Among the largest recipients of purported food from the defendant were food sites fraudulently operated by his co-defendants, including SHARMARKE ISSA and KAWSAR JAMA.

As part of the fraud, the defendant used and shared records containing false information, and he admits that his use of fraudulent records in email

communications constitutes an interstate wiring for the purpose of executing the scheme in violation of Title 18, United States Code, Section 1343. For example, as alleged in Count Fourteen in the Superseding Indictment, on or about November 5, 2021, the defendant emailed a fraudulent food invoice to KAWSAR JAMA. Among other things, KAWSAR JAMA was the operator of a Federal Child Nutrition Program site located in Pelican Rapids, Minnesota, a small town in west-central Minnesota with a population of approximately 2,500 people. In his fraudulent invoice to KAWSAR JAMA, the defendant falsely claimed, among other things, that he supplied KAWSAR JAMA with $293,300 worth of food for 140,000 meals and snacks for KAWSAR JAMA's Pelican Rapids site in October 2021.

To carry out the scheme, the defendant and others shared fraud money and, at times, sought to disguise disbursements of fraudulent proceeds to conceal their conduct. For example, in or around January 2021, SHARMARKE ISSA deposited approximately $345,238 in fraudulent proceeds from the defendant. To hide their movement of fraud proceeds, the defendant's payment purported to be a "donation" to SHARMARKE ISSA's entity, which was false. Also, between approximately December 2020 and December 2021, the defendant distributed approximately $3.7 million in proceeds of the fraud to an entity called Dua Supplies & Distribution Inc. Although payments from the defendant to Dua Supplies & Distribution Inc. purported to be for food, in reality, Dua Supplies & Distribution Inc. supplied little food, if any, to the defendant as part of the Federal Child Nutrition Program.

The defendant misappropriated Federal Child Nutrition Funds to benefit himself on expenditures unrelated to feeding children. The defendant acknowledges that throughout the scheme he misappropriated and laundered Federal Child Nutrition Program funds, such as spending at least: (a) $2 million on real estate; and (b) $400,000 on vehicles, including the purchase of a 2022 Mercedes.

In total, the defendant's fraudulent conduct resulted in a loss to the Federal Child Nutrition Funds of at least $19 million. Ultimately, the defendant fraudulently received approximately $11,483,827 in Federal Child Nutrition Program funds.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will

4

be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.  **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

In addition, the defendant understands that pleading guilty may have consequences with respect to the defendant's immigration status, including removal or deportation. The defendant understands that no one, including the defendant's attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. Regardless of any immigration consequences that may follow from a guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

6. **Statutory Penalties**. The parties agree that wire fraud, as charged in Count Fourteen of the Superseding Indictment, carries statutory penalties of:

    a.    a maximum term of imprisonment of 20 years in prison;

    b.    a supervised release term of up to three years;

    c.    a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater; and

    c.    a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

    a.    <u>Base Offense Level</u>. The parties agree that the base offense level for wire fraud is **7**. U.S.S.G. § 2B1.1(a)(1).

    b.    <u>Specific Offense Characteristics</u>. The parties agree that the offense level should be increased by **20** levels because the loss ($19 million) is more than $9,500,000, but not more than $25,500,000. U.S.S.G. § 2B1.1(b)(1)(K). The parties agree that no other specific offense adjustments apply.

    c.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a **2**-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **1**-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the

6

following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

d. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **III**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

e. <u>Guidelines Range</u>. If the adjusted offense level is **24 (7 + 20 – 3)**, and the criminal history category is **III**, the Sentencing Guidelines range is **63-78** months of imprisonment.

f. <u>Fine Range</u>. If the adjusted offense level is **24**, the Sentencing Guidelines fine range is **$20,000** to **$200,000**. U.S.S.G. § 5E1.2(c)(3).

g. <u>Supervised Release</u>. The Sentencing Guidelines call for a term of supervised release of between one and three years for Count Fourteen. U.S.S.G. § 5D1.2(a)(2).

8. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing

7

Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.  **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

10. **Revocation of Supervised Release.** The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed

8

on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11. **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Superseding Indictment. The defendant agrees that he owes restitution in the amount of $11,483,827.

13. **Disclosure of Assets**. The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases

9

that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, as charged in Count Fourteen of the Superseding Indictment, including but not limited to:

    a.    $224,835.23 seized from Bell Bank account No. 6521127305, held in the name of US Halal Foods LLC;

    b.    $1,197,946.40 seized from Huntington National Bank account No. 1438393443, held in the name of Haji's Kitchen LLC;

    c.    $11,832.90 seized from Huntington National Bank account No. 2436665868, held in the name of Haji Osman Salad;

    d.    $1,823,896.90 seized from JPMorgan Chase Bank account No. 672371900, held in the name of Haji's Kitchen LLC;

    e.    $146,693.56 seized from JPMorgan Chase Bank account No. 720708376, held in the name of Haji O. Salad;

    f.    $13,168.50 seized from Bremer Bank account No. 289483233, held in the name of Haji's Kitchen, LLC;

    g.    $8,775.00 seized from Bremer Bank account No. 222483487, held in the name of Haji Osman Salad;

    h.    $40,528.41 seized from Vision Bank account No. 2015707, held in the name of Haji's Kitchen, LLC;

   i. $39,223.48 seized from Vision Bank account No. 2015719, held in the name of Haji Salad;

   j. $42,824.91 seized from Trustone account No. 934565-0001, held in the name of Haji's Kitchen, LLC;

   k. Foris Inc., dba Crypto.com account the name of Haji Salad, associated with User ID 36848558, with digital currency holdings valued at $57,557.47, and Fiat Currency holdings valued at $78.54, at the time of seizure in May 2022;

   l. $14,500 seized from Huntington Bank account No. 04436834587, held in the name of A.O. Salad (minor) F.A.A. as custodian;

   m. $2,243.01 seized from JP Morgan Chase account 3750102338 held in the name of F.A.A. as custodian for A.O. Salad (minor);

   n. $91.70 seized from JP Morgan Chase account 765761611, held in the name of F.A.A.;

   o. 2021 Dodge Ram, VIN: 1C6SRFHT3MN626173;

   p. 2021 Dodge Ram 1500, VIN: 1C6SRFHT8MN602449;

   q. $44,595.41 representing the net proceeds of the interlocutory sale of a 2022 Mercedes Benz GLE Coup, VIN: 4JGFD6BSNA589107; and

   r. Rodeo Joe Men's watch seized from 5707 Hwy 7, Saint Louis Park, Minnesota.

  The defendant admits that this property is subject to forfeiture because it constitutes or is traceable to the wire fraud scheme alleged in Count Fourteen of the Superseding Indictment.

  The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest the defendant may have in the property. The defendant waives all statutory

and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds.

The defendant consents to the entry of a money judgment forfeiture in the amount of $11,483,827, which represents the amount of proceeds he obtained from the wire fraud scheme as alleged in the Superseding Indictment. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

15.  **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range of imprisonment.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral

challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the United States may appeal the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range of imprisonment.

16.   **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17.   **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions

have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated: Sept. 19, 2024

ANDREW M. LUGER
United States Attorney

BY: *(signature)*
JOSEPH H. THOMPSON
MATTHEW S. EBERT
HARRY M. JACOBS
Assistant United States Attorneys

Dated: 9/19/24

*(signature)*
HAJI OSMAN SALAD
Defendant

Dated: Sep 19 2024

*(signature)*
PAUL APPLEBAUM
Counsel for Defendant